■     HARRY SAGE, Appellant, v. UNITED STATES LINES, INC., et al., Respondents. UNITED STATES LINES, INC., Third-Party Plaintiff-Appellant, v. CHELSEA SHIP REPAIR CORPORATION, Third-Party Defendant-Respondent.— Judgment, Supreme Court, New York County, entered January 12, 1973, after trial to a jury, modified, on the law, to vacate dismissal of the complaint against defendant-respondent International Terminal Operating Company, Inc., and to reinstate that complaint, and the case against that defendant severed and remanded for trial anew, with $60 costs and disbursements to plaintiff-appellant against that defendant to abide the event, and otherwise affirmed without costs and without disbursements. Plaintiff, a marine carpenter employed by Chelsea Ship Repair Corp. was engaged aboard a vessel owned by defendant-respondent United States Lines. (USL) in battening down hatches to permit deck cargo to be stored above them. That work is ordinarily done by carpenters in pairs who use a sort of wrench, known as a batten bar, to engage and tighten lugs. Plaintiff, contrary to the usual practice, was struggling alone with his batten bar when one Teodosio, employee of the stevedoring company, defendant International, who had been standing by with his fellows awaiting completion of the battening down so they could continue loading, offered to help plaintiff, and added his weight to plaintiff's batten bar. He let go prematurely, causing, it is said, plaintiff to twist his neck, sustaining a severe sprain. Plaintiff's foreman examined the bar, observed it to have been deformed, and jettisoned it. Plaintiff's action against USL was based on a claim that the bar was defective. The court instructed the jury that, for recovery against the shipowner, it must be found that the bar was not fit for its intended purpose, and that this was the proximate cause of the injury, whether or not concurrent with negligence on the stevedore's part. Neither objection nor exception was taken to this "unseaworthiness" charge and, actually, it was more in plaintiff's favor than he was entitled to have, being a shore-side employee and not a seaman covered by the Jones Act (U. S. Code, tit. 46, § 688). We believe the jury was fairly charged in this regard, and the verdict exculpating the shipowner will stand. We find, however, that the court's dismissal at the end of plaintiff's case as against the stevedore, Teodosio's employer, was improper. There was evidence both ways as to the existence of a practice according to which waiting stevedores customarily assisted carpenters in circumstances such as obtained here. If, actually, Teodosio's act was negligently done in the scope of his employment, then the stevedoring company would be cast into liability. All of this is a jury question, and a new trial is accordingly directed. (See, e.g., *Fermo* v. *Manufacturers Trust Co.*, 15 A D 2d 814.) Concur — Markewich, J. P., Tilzer and Capozzoli, JJ.; Kupferman and Murphy, JJ., dissent in the following memorandum by Murphy, J.: We disagree and would affirm the dismissal of the complaint as against defendant International Terminal Operating Company, Inc. ("ITO"). The only evidence adduced as to "custom and practice" came from plaintiff, his foreman and Teodosio, none of whom qualified as an expert. All of the expert evidence

was to the contrary and indicated a strict division of labor in the Port of New York. Significantly, the stevedore suffers no economic loss when a work delay occurs. Since there was no evidence introduced to support a finding that ITO ever countenanced or encouraged its employees to assist marine carpenters, or that ITO's interests were furthered thereby, the trial court correctly concluded that Teodosio was merely a volunteer who was not acting within the authorized scope of his duties when he went, unsolicited, to plaintiff's aid.